IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Robbie Collins, | ) | Civil Action No. 2:24-00960-RMG-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Samantha Burdette, Nurse Driver, | ) | |
| Dr. McCree, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil action seeking relief pursuant to 42 U.S.C. § 1983. As explained in the undersigned's initial order (Dkt. No. 1), the instant case was severed from Case No. 2:23-cv-05273-RMG-MGB on February 26, 2024 and is limited to Plaintiff's claims against Samantha Burdette, Nurse Driver, and Dr. McRee[1] (collectively, "Defendants"), summarized below. Before the Court is a Motion for Summary Judgment filed by Defendants Burdette and McRee (Dkt. No. 78) and a Motion for Summary Judgment filed by Defendant Driver (Dkt. No. 80).[2] (Dkt. No. 23.) For the reasons set forth below, the undersigned recommends Defendants' Motions be granted.

## BACKGROUND

### A.    General Background

The following allegations in Plaintiff's unverified Complaint[3] (Dkt. No. 2) pertain to the three Defendants in this action and arise from the alleged inadequate medical treatment Plaintiff

---

[1] Defendants assert that Plaintiff's Complaint incorrectly identifies Defendant Dr. McRee as "Dr. McCree." (Dkt. No. 78-1 at 1.) The undersigned refers to this Defendant by his correct name, Dr. McRee.

[2] Pursuant to 28 U.S.C. §636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge.

[3] While Plaintiff labeled his pleadings "Verified Complaint" and "Amended Verified Complaint" (*see* Dkt. Nos. 2; 2-1), they are not "sworn and submitted under penalty of perjury." *Goodman v. Diggs*, 986 F.3d 493, 495 (4th Cir. 2021)

received at McCormick Correctional Institution ("MCI"). More specifically, Plaintiff claims that he received his first dose of the Moderna COVID-19 vaccine on July 22, 2022, after which he developed "a knot on [his] arm at the injection site" and "shortness of breath." (Dkt. No. 2 at 1.) Plaintiff notified Defendants Driver, Burdette, and McRee, who told him "there was nothing that could be done." (*Id.*) However, Plaintiff continued to experience shortness of breath and labored breathing, so Defendant McRee eventually sent Plaintiff to get an x-ray of his lungs on August 17, 2022. (*Id.*; Dkt. No. 2-1 at 4.) The x-ray apparently revealed "calcified nodules" on Plaintiff's left helium. (Dkt. No. 2 at 1; Dkt. No. 2-1 at 4.) Notwithstanding these results, Defendants Driver, Burdette, and McRee still gave Plaintiff the second dose of the Moderna vaccine the following day. (Dkt. No. 2 at 1; Dkt. No. 2-1 at 4.) Plaintiff immediately began to develop "knots" in his arms, stomach, and throat. (Dkt. No. 2 at 1; Dkt. No. 2-1 at 4.) According to Plaintiff, "the pain of the knots in [his] throat was unbearable" and impeded his ability to swallow food. (Dkt. No. 2 at 1–2.) Plaintiff alleges "on one occasion, [he] refused to go into [his] room because of the pain of the knots in [his] throat was unbearable and [he] was taken to medical and Nurse Driver grabbed a flashlight, told [him] to open [his] mouth and documented there was no bumps visible." (*Id.* at 2.)

Plaintiff claims that despite continuing to complain about these "knots" for months, he "was never given anything for [the] pain." (Dkt. No. 2-1 at 4–5.) Plaintiff alleges that he told Defendants Driver and McRee about his "complications of breathing, tightness in [his] chest, chills, lethargy, [and] weakness," and "they ordered lab (bloodwork)." (*Id.* at 4.) According to Plaintiff, "the test came back in January [2023] noting [his] neutrophil and platette [sic] count had dropped dangerously low" and indicated Plaintiff should be "put . . . on Vitamin B and Folic Acid."

---

("A complaint is 'verified' if it is 'signed, sworn, and submitted under penalty of perjury.'" (quoting *James v. Hale*, 959 F.3d 307, 314 (7th Cir. 2020))).

(*Id*.) Plaintiff alleges Defendants Driver, McRee, and Burdette were "informed" of the "Jan. 30, 2023 lab results" and they failed to put Plaintiff on Vitamin B and Folic Acid. (*Id*. at 4–5.) Plaintiff alleges he was eventually "put on Vitamin B and Folic Acid" after an "emergency visit" with his "Mental Health Doctor" on May 16, 2023. (*Id*. at 5.) Plaintiff alleges he "went to the pulmonologist," and he realized Burdette and Driver did not "send the x-ray of [Plaintiff's] lungs with [his] file." (*Id*. at 5.)

After filing a motion to receive medical treatment in a separate civil action before this Court,[4] Plaintiff saw an ENT who told him that Plaintiff "should have been seen sooner" and "they shouldn't have given [him] the second dose once the nodules appeared in [his] body especially in [his] lungs." (Dkt. No. 2 at 2; Dkt. No. 2-1 at 6.) The ENT also stated that he needed to perform a biopsy of one of the nodules "to see what's really going [on]," but Plaintiff has yet to be scheduled for the procedure. (Dkt. No. 2 at 2.) Moreover, he has "lost over 40 pounds and can barely swallow solid food." (*Id*.) He claims that his "condition continues to worsen without any treatment." (*Id.* at 3.)

As noted above, Plaintiff initially filed the Complaint containing the foregoing allegations on October 23, 2023, in Case No. 2:23-cv-05273-RMG-MGB. On February 26, 2024, the undersigned severed the allegations comprising this portion of the Complaint into the instant lawsuit and construed this action as alleging violations of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment against Defendants Burdette, Driver, and McRee. (Dkt. No. 1.)

On March 7, 2025, Defendants Burdette and McRee filed a Motion for Summary Judgment (Dkt. No. 78) and Defendant Driver filed a separate Motion for Summary Judgment (Dkt. No. 80).

---

[4] *See Collins v. Bernedette*, No. 2:22-cv-1391-RMG-MGB.

On March 10, 2025, this Court issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the dismissal procedure and the possible consequences if he failed to adequately respond to the motions. (Dkt. No. 81.) Plaintiff filed a response in opposition to Defendant Driver's Motion for Summary Judgment on March 27, 2024 (Dkt. No. 86), to which Driver filed a reply on April 3, 2025 (Dkt. No. 87). Plaintiff filed a sur-reply to Driver's reply brief on April 18, 2025. (Dkt. No. 89.) On April 28, 2025, Plaintiff filed a response in opposition to the Motion for Summary Judgment filed by Defendants Burdette and McRee (Dkt. No. 90), to which Defendants Burdette and McRee filed a reply on May 12, 2025 (Dkt. No. 94).[5] Plaintiff filed a sur-reply to these Defendants' reply brief on June 2, 2025. (Dkt. No. 95.) The Motions have been fully briefed and are ready for review.

### B.     Evidentiary Background

In support of their Motions for Summary Judgment, Defendants rely on affidavit testimony; Plaintiff's inmate search detail report; Plaintiff's medical records; and court filings submitted in a separate federal civil action filed by Plaintiff, *Collins v. Bernedette*, No. 2:22-cv-1391-RMG-MGB. In his opposition briefing, Plaintiff relies on his medical records; purported printouts from the website for the Center for Disease Control ("CDC"); Defendants' responses to his discovery requests; and an "Emergency Grievance" he submitted on September 11, 2023. Because Plaintiff's Complaint is not verified, it does not constitute admissible evidence at summary judgment. *See Thompson v. Hartsfield*, No. 5:17-CT-3262-FL, 2020 WL 5709247, at *4 (E.D.N.C. Sept. 24, 2020) ("Plaintiff's unverified complaint is not competent summary judgment evidence."); *Huff v. Outlaw*, No. 9:09-cv-00520-RBH, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is

---

[5] Plaintiff was granted an extension of time to file his response brief, and Defendants Burdette and McRee were also granted an extension of time to file a reply brief. (Dkt. Nos. 83; 84; 91; 92.)

clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment.").

### 1.     Defendant Driver's Affidavit Testimony and Plaintiff's Medical Records

In her affidavit, Defendant Lisa Driver states she was employed by MedFirst Staffing LLC ("MedFirst") as a licensed practical nurse ("LPN") "[a]t the times mentioned in Plaintiff's Complaint." (Dkt. No. 80-2 at 1.) MedFirst provides medical staffing to incarcerated individuals through a contract with the South Carolina Department of Corrections ("SCDC"). (*Id*.) Driver avers that she was employed by MedFirst in June of 2023 to work as an LPN at MCI, wherein she "was assigned to assist [Defendant] Dr. John McRee as he sees patients at MCI's medical office."[6] (*Id*.) Driver stopped working at MCI in March of 2024, "due to SCDC eliminating some of its part-time contracted workforce." (*Id*.)

In her affidavit, Driver first recounts her interactions with Plaintiff, as substantiated in the medical record. Driver avers that she saw Plaintiff in medical on June 24, 2021 "when he reported difficulty breathing and wheezing despite self-administration of albuterol from his inhaler prior to arriving at medical." (*Id.* at 2.) Driver avers, and the medical record documents, that Plaintiff's "vital signs were within normal limits and [Driver] explained to him that this did not indicate asthma distress. Nevertheless, [Driver] offered to give him a nebulizer treatment, which he declined." (*Id*. at 2, 10–11.) On September 23, 2021, Driver saw Plaintiff for a lab visit to perform labs "CH50" and "CBC."[7] (*Id.* at 30.) On October 25, 2021, Plaintiff refused the MUSC Covid Swab. (*Id*. at 2, 13.) On March 10, 2022. Plaintiff was brought to medical complaining of tooth

---

[6] As discussed herein, the medical record shows Driver treated Plaintiff beginning in June of 2021. Accordingly, the starting employment date identified in Driver's affidavit appears to be a scrivener's error.

[7] A complete blood count (CBC) is a blood test that measures amounts and sizes of your red blood cells, hemoglobin, white blood cells and platelets." Complete Blood Count (CBC), *Cleveland Clinic*, https://my.clevelandclinic.org/health/diagnostics/4053-complete-blood-count (last visited Nov. 10, 2025).

pain. (*Id*. at 2, 17.) Driver avers, and the medical record documents, that the "dentist was not available on that date, so [Driver] provided Plaintiff with a four-day supply of ibuprofen and instructed him on making a paste to apply the medicine to the affected area." (*Id*. at 2, 17.) The record shows Plaintiff was seen at the dental clinic on March 23, 2022. (*Id*. at 2, 16.)

On May 31, 2022, Driver did not see Plaintiff, but she "entered orders for [non-party] Dr. Benjamin Lewis to review upon [Plaintiff's] return from the gastrointestinal clinic." (*Id*. at 2, 19.) According to Driver, one of her "duties working with Dr. McRee is handling coordination of care with outside providers. Plaintiff had orders for a colonoscopy a couple of weeks later on June 17, 2022, and for a follow-up appointment." (*Id.* at 2, 19.) Driver's "chart entry related to the procedures for preparing for the colonoscopy, . . . [and] SCDC's administration approved the referral to Berkely Endoscopy for Plaintiff's colonoscopy the same day." (*Id*. at 2, 19–20.)

On October 7, 2022, Driver "saw Plaintiff in medical following his report to sick call for difficulty breathing that his albuterol inhaler did not resolve." (*Id*. at 3, 23.) Driver avers, and the medical record documents, that she "detected wheezing in both upper lobes of his lungs. After administering a nebulizer treatment, Plaintiff's lung sounds were clear and he had a blood oxygen level of 99%. Later that day, Dr. Benjamin changed Plaintiff's inhaler prescription from Ventolin to Advair." (*Id*. at 3, 23–25.) On December 19, 2022, Driver saw Plaintiff for a "Lab Visit" to take Plaintiff's levels of "Vit B 12 and Folate." (*Id.* at 29.) Those lab results do not appear to be in the record. On February 7, 2023, Driver examined Plaintiff after he complained "of a knot in his throat that prevented him from swallowing." (*Id*. at 3, 27.) Driver avers, and the medical record documents, that

> Plaintiff was not in distress and did not exhibit signs of dehydration. [Driver] examined his throat and did not see any indication of a problem. [Driver] explained to him that he could not be sent to the hospital because he did not have any life-threatening symptoms, that he had been seen previously for the same complaint,

and that he had a pending appointment with a gastroenterologist. [Driver] reported
these complaints to Dr. Lewis.

(*Id*. at 3, 27.) Driver avers, and the medical record documents, that this was her last interaction

with Plaintiff. (*Id.* at 3.)

   In addition to the above summary, Driver also discusses the relevant portions of Plaintiff's

medical record "relating to [Plaintiff's] care with other providers at SCDC." (*Id*.) On July 22, 2022,

Plaintiff received the first dose of the Moderna vaccine for COVID-19. (*Id*. at 3, 32.) The record

shows this vaccine was administered by non-party, Nurse Chandlyn Reyes, who noted "no redness

or swelling to the injection" site. (*Id*. at 3, 32–33.) The record documents Plaintiff signed a

"COVID-19 Vaccine Consent Form" prior to the vaccination. (*Id.* at 33.) On August 18, 2022,

Plaintiff received the second dose of the Moderna vaccine, and he signed another consent form at

that time, in which he indicated he had not "ever had a severe reaction to any vaccine or injectable

therapy." (*Id*. at 3, 36–37.) This second dose was administered by another non-party, LPN Leah

Cream. (*Id*. at 3, 36–37.)

   In her affidavit, Driver acknowledges Plaintiff's allegation that "he should not have

received the second Moderna shot because of findings on an x-ray report completed on August 17,

2022." (*Id*. at 4.) On this issue, Driver avers, and the medical record documents, that

> On the day prior to Plaintiff's second Moderna dose, [non-party] Deborah
> Cunningham charted that Plaintiff returned from an x-ray appointment and that a
> report would follow. . . . The fax time stamp on [non-party] Dr. Close's report
> indicates it was transmitted to MCI on August 18, at 1:15 pm. . . . Deborah
> Cunningham, CNA reported Dr. Close's findings from the August 17, x-ray in a
> communication message to Dr. Lewis on August 22. . . . Dr. Close's note did not
> advise that a second Moderna dose was contraindicated by his interpretation of the
> x-ray.

(*Id*. at 4, 39–41.)

Driver avers, and the medical record documents, that on August 23, 2022, non-party Nurse Miranda Moore sent a message to Dr. Lewis reporting that Plaintiff was not feeling well after last covid vaccine and that a "dime size knot can be felt under skin underneath vaccination area." (*Id.* at 4, 43.) Plaintiff reported cold sweats, chills, left arm still sore, sharp pain from the knot on and off, a rash located mid chest going up to the collar bone, and small, slightly red bumps. (*Id.* at 4, 43.) The record shows Nurse Moore provided hydrocortisone to treat Plaintiff's complaints of itching and burning. (*Id.* at 4, 43.) Plaintiff also complained of breathing difficulty and reported he has been without his inhaler. (*Id.* at 4, 43.) Nurse Moore detected congestion in both lobes and administered a breathing treatment. (*Id.* at 4, 43.) Plaintiff reported that he felt better, and his lung sounds improved. (*Id.* at 4, 43.) Nurse Moore reported vital signs that were all within normal limits. (*Id.* at 4, 43.) The next day, Dr. Lewis reviewed Nurse Moore's chart entry and asked that Plaintiff be scheduled for the physician's clinic. (*Id.* at 4, 43.)

On September 7, 2022, Plaintiff complained of "wheezing" and shortness of breath to Nurse Moore.[8] (Dkt. 87-1 at 6.) Nurse Moore detected "abnormal lung sounds in right lobe upper/lower" and she administered a breathing treatment, after which Plaintiff said he "felt much better." (*Id.*) Plaintiff was "placed on M.D. list . . . for further review." The next day, Defendant Dr. McRee saw Plaintiff at MCI, wherein he "assessed that Plaintiff's asthma has worsened after a Covid infection in early 2023." (Dkt. No. 80-2 at 4, 45–48.) Based on Dr. McRee's evaluation, he submitted a request for Plaintiff to be seen by a pulmonologist. (*Id.* at 5, 45–48.) His request was approved that same day. (*Id.* at 5, 48.)

As recounted in Plaintiff's medical record and by Driver, Plaintiff was seen by non-party Dr. Shawn Ghent with Carolina Pulmonology on October 27, 2022. (*Id.* at 5, 50–52.) Plaintiff was

---

[8] This portion of Plaintiff's medical record, pertaining to the treatment on September 7, 2022, was submitted with Driver's reply brief. (Dkt. No. 87-1 at 6.)

diagnosed with asthma, and Dr. Ghent ordered a complete pulmonary function test, nitric oxide breath test, and chest x-rays. (*Id*. at 5, 50–51.) "Though the pulmonary test indicated moderate obstructive ventilatory defect, these improved with administration of albuterol inhaler." (*Id.* at 5, 50–51.) The nitric oxide test was normal. Dr. Ghent recommended a complete blood panel, a respiratory allergy panel, and changes to Plaintiff's asthma inhalers. The physician indicated that a follow-up visit was at the discretion of SCDC's medical providers. (*Id*. at 5, 50–51.) The x-ray impressions indicated "no obvious pulmonary parenchymal findings, lung markings appear normal, no pleural fluid, heart size is normal, pulmonary arteries appear normal." (*Id*. at 5, 50–51.) Dr. Ghent's findings were reported to Dr. Lewis on the same day. (*Id*. at 5, 52.) The "CBC with differential" recommended by Dr. Ghent was performed the following day, on October 28, 2022. (*Id*. at 5, 53–55.)

Driver avers, and the medical record documents, that on December 21, 2022, Plaintiff complained to non-party Nurse Deborah Nickens of "knots on bilateral arms and ask[ed] to review x-ray report of lung." (*Id*. at 5, 57.) Nurse Nickens was not able to visually observe these knots, and she could not feel one on the left arm. She assessed a small, raised area on Plaintiff's right arm, but he did not complain of pain or discomfort when touched. Plaintiff was assigned to see the doctor on the next visit. (*Id.* at 5, 57.) On January 3, 2023, Plaintiff was seen by Defendant Dr. McRee. (*Id.* at 5, 59–62.) McRee requested Plaintiff be seen by an otolaryngology specialist due to perihilar nodules detected on a chest x-ray. (*Id.* at 5, 61–62.) Dr. McRee also assessed enlarged nodules on Plaintiff's throat, which "began after covid vaccine." (*Id.* at 5, 61–62.) This request was approved the next day, and Plaintiff visited the lab for allergen testing. (*Id*. at 6, 63–65.) On February 28, 2023, Dr. McRee requested that Plaintiff receive a consultation with an allergist

because of lung congestion and allergies discovered in a previous lab test. (*Id.* at 6, 68.) This request was approved the same day, with a note "awaiting date/time for appt." (*Id.* at 6, 68.)

Driver avers, and the medical record documents, that on April 25, 2023, Plaintiff received a telehealth appointment with a non-party allergist named Dr. Pulcini with Prisma Health Greenville. (*Id.* at 6, 71.) That same day, Plaintiff had a CBC with differential labs collected. (*Id.* at 6, 72–74.) "Due to Plaintiff's advanced asthma, a pulmonologist recommended Symbicort and Flonase." (*Id.* at 6, 75–76.) These medications were approved on April 26, 2023. (*Id.* at 6, 75–76.) On May 16, 2023, Plaintiff's non-party treating psychiatrist, Dr. Howard, reported that lab results indicated significantly low ANC and platelet counts. (*Id.* at 6, 84–85.) Dr. Howard recommended that Plaintiff stop certain psychotropic medications that might contribute to this result. (*Id.* at 6, 84–85.) Plaintiff was seen by Dr. McRee immediately after his visit with Dr Howard. (*Id.* at 6, 79–80.) After that visit, Dr. McRee submitted a request for Plaintiff to see a hematologist, and the request was approved the next day. (*Id.* at 6, 78, 81.) On June 12, 2023, Plaintiff was seen at Self Regional Oncology and diagnosed with neutropenia[9] and thrombocytopenia.[10] (*Id.* at 6, 87–92.)

On July 18, 2023, Plaintiff was seen outside the facility by an otolaryngologist. (*Id.* at 6, 94–95.) That provider noted Plaintiff's complaint of nodules on his uvula and unexpected weight loss. (*Id.* at 6, 95.) "The provider diagnosed Plaintiff as having 'globus sensation,' which is feeling like you have a lump in your throat even when there's nothing there, recommended a biopsy of the uvula, and recommended a laryngoscopy." (*Id.* at 6, 95.) On July 20, 2023, Dr. McRee submitted a referral form for Plaintiff to follow up with an otolaryngologist regarding the biopsy of Plaintiff's

---

[9] Neutropenia "means that the body has too few neutrophils, a type of white blood cells." Neutropenia, *Mayo Clinic*, https://www.mayoclinic.org/symptoms/neutropenia/basics/definition/sym-20050854 (last visited Nov. 10, 2025). "Neutropenia can raise your risk of infections." *Id.*

[10] "Thrombocytopenia is low blood platelet count" that "can happen because of conditions or medicines that affect the circulation, production or destruction of blood platelets. . . . If platelets become too low, there is a risk of serious bleeding after an injury or during surgery." Thrombocytopenia, *Mayo Clinic*, https://www.mayoclinic.org/diseases-conditions/thrombocytopenia/symptoms-causes/syc-20378293 (last visited Nov. 10, 2025).

uvula. (*Id.* at 7, 97.) On July 21, 2023, Plaintiff was seen in medical "for pain in his back when he inhales that has been going on for 3 months now."[11] (Dkt. No. 87-1 at 4.) Non-party Nurse Allie Watts noted that Plaintiff "walked to medical without difficulty," his vital signs were within normal limits and his "lungs are clear and equal bilaterally." (*Id.*) Nurse Watts administered a Covid test, which was negative, and gave Plaintiff "a starter pack of tylenol." (*Id.*) On August 12, 2023, Plaintiff was seen outside the facility by an oncologist.[12] (Dkt. No. 90-3 at 45–48.) His physical exam at this visit documented that Plaintiff's respiratory was "clear to auscultation bilaterally, without rhonchi or wheezing." (*Id.* at 47.) On August 31, 2023, Plaintiff complained "of a sore throat, feels he has knots in the roof of mouth, [and] gums sensitive." (Dkt. No. 87-1 at 2.) Non-party Nurse Nickens noted that Plaintiff had "thick white patchy areas covering the tongue" and "raised area to the Uvula with redness." (*Id.*) Nurse Nickens notified the on-call provider, non-party Dr. Byrne, and Dr. Byrne gave a verbal order for Tylenol 325 mg. (*Id.*)

On September 8, 2023, Plaintiff complained to non-party LPN Travia Johnson "of thrush to tongue with no improvement from magic mouthwash." (Dkt. No. 90-3 at 49.) Plaintiff's medical record indicates that he visited the Self Regional Hospital cancer center on September 12, 2023, and on September 19, 2023, the cancer center confirmed Plaintiff would not need a follow up appointment. (*Id.* at 53, 62.) On September 26, 2023, Dr. McRee submitted a referral form for Plaintiff to see a gastroenterologist regarding his "throat nodules" and the request was approved that same day.[13] (*Id.* at 65.) The record shows that Plaintiff transferred from MCI to Lee Correctional Institution ("LCI") on September 28, 2023. (Dkt. No. 80-3 at 8.) On August 2, 2024,

---

[11] This portion of Plaintiff's medical record, pertaining to the treatment on July 21, 2023 and August 31, 2023, was submitted with Driver's reply brief. (Dkt. No. 87-1 at 4.)

[12] This portion of Plaintiff's medical record, pertaining to the August 12, 2023 consultation, was submitted with Plaintiff's briefing. It does not appear Plaintiff provided the complete record pertaining to this specific consultation.

[13] This portion of Plaintiff's medical record dated September of 2023 was submitted with Plaintiff's briefing.

Plaintiff underwent a CT scan of the soft tissues of the neck, which showed "no specific abnormality." (Dkt. No. 80-4 at 2.)

## 2.    Related Cases

The Court takes judicial notice that Plaintiff filed two other civil cases in federal court that are relevant to his claims in this action.[14] First, on May 2, 2022, Plaintiff filed a civil action in *Collins v. Bernedette*, No. 2:22-cv-1391-RMG ("*Collins I*") pursuant to § 1983 alleging, *inter alia*, Samanta Burdette and others were deliberately indifferent to Plaintiff's serious medical needs by "refus[ing] to fully vaccinate" Plaintiff when he was already suffering from "post-COVID complications" and he "caught COVID again" as a result. *Collins I*, Dkt. Nos. 1 at 6; 1-1 at 2. Plaintiff's allegations in *Collins I* arose from an alleged failure to provide Plaintiff a booster vaccine after he received his first dose of the Moderna vaccine on May 14, 2021. *Id.*, Dkt. No. 91-2. Plaintiff's claims in *Collins I* were dismissed at summary judgment. *Id.*, Dkt. Nos. 133; 205. Relevant here, the Court in *Collins I* granted summary judgment to Burdette on the basis that Plaintiff had failed to provide competent expert testimony supporting his claim that the failure to receive the second Moderna COVID-19 vaccine proximately caused him to contract COVID-19. *Id.*, 205.

On February 13, 2024, Plaintiff filed a civil action in *Collins v. Nurse Renee Thompson et al* 2:24-cv-01208-RMG ("*Collins II*") pursuant to § 1983 alleging improper medical treatment upon Plaintiff's transfer to LCI on September 28, 2023.[15] *Collins II*, Dkt. No. 2 at 17–18. In *Collins*

---

[14] A federal court may take judicial notice of the contents of its own records, as well as those records and proceedings of other courts. *See Aloe Creme Labs., Inc. v. Francine Co.*, 425 F.2d 1295, 1296 (5th Cir. 1970); *see also Tisdale v. South Carolina Highway Patrol*, No. 0:09-cv-1009-HFF-PJG, 2009 WL 1491409, at *1 n.1 (D.S.C. May 27, 2009), *aff'd*, 347 F. App'x 965 (4th Cir. Aug. 27, 2009) (noting that the court may also take judicial notice of factual information located in postings on government web sites). Also, under Federal Rule of Evidence 201(b), the district court may judicially notice a fact that is not subject to reasonable dispute when it is either (1) generally known within the district court's jurisdiction, or (2) can be readily determined from an indisputably accurate source. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

[15] None of the Defendants in the instant action were named as defendants in *Collins II*.

*II*, Plaintiff alleged he arrived at LCI "suffering from extreme rectal bleeding, sharp pains when [he] inhale[d], excruciating pain in [his] left foot, shoulder pains, and knots in [his] throat and appendages that cause[d] excruciating pain." *Id.*, Dkt. No. 2 at 17. Plaintiff further alleged that "SCDC refuses to take [Plaintiff] to have procedures done"; specifically a "scheduled . . . colonoscopy, endoscopy, ENT biopsy, and surgery on [his] left foot." *Id.*, Dkt. No. 2 at 18. Plaintiff's claims in *Collins II* were dismissed at summary judgment. Relevant here, the Court in *Collins II* considered Plaintiff's medical records, which showed that Plaintiff had an endoscopy in August of 2024, and a uvula biopsy around that same time. *Id.*, Dkt. No. 64-5 at 2; 30–35. A follow-up appointment at the ENT on September 17, 2024 revealed that the biopsy was negative for malignancy and Plaintiff's symptoms were due to laryngopharyngeal reflux.[16] *Id.*, Dkt. No. 64-5 at 30. Plaintiff's "reflux" medication was increased, and SCDC was advised that no follow up treatment was needed. *Id.*, Dkt. No. 64-5 at 30.

## STANDARDS

In their Motions for Summary Judgment, Defendants first contend that Plaintiff's allegations fail to state a claim upon which relief can be granted. "Although the defense of failure to state a claim is typically raised in a Rule 12(b)(6) motion, it may also be asserted in a motion for summary judgment or at trial." *Perkins v. Newcomer*, No. 7:23-cv-00074, 2024 WL 4295261, at *5 (W.D. Va. Sept. 25, 2024) (citing *Martin v. Southwestern Va. Gas Co.*, 135 F.3d 307, 309 n.1 (4th Cir. 1998); Fed. R. Civ. P. 12(h)(2)(C)). To withstand dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[16] "Laryngopharyngeal . . . reflux, or LPR, is a special type of acid reflux. . . . Instead of causing heartburn and indigestion, LPR tends to irritate your voice, throat and sinuses. . . . An . . . [ENT] doctor typically diagnoses LPR. They'll listen to your symptoms, then take a look inside your throat for signs of inflammation or tissue damage. A flexible laryngoscopy is a simple, in-office procedure they can use to look inside your throat." Laryngopharyngeal Reflux (LPR), *Cleveland Clinic*, https://my.clevelandclinic.org/health/diseases/15024-laryngopharyngeal-reflux-lpr (last visited Nov. 10, 2025).

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While "detailed factual allegations" are not required, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." *Wilcox v. Brown*, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint *pro se*, the court must construe pleading requirements liberally." *Id.* Nevertheless, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A complaint filed by a *pro se* plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Terr.*, 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

In their Motions, Defendants further assert that they are entitled to summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Pursuant to Rule 56, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In ruling on such a motion for summary judgment, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). Although the Court must "draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Sandlands C & D LLC v. Cty. of Horry*, 737 F.3d 45, 54 (4th Cir. 2013) (citing *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Combs v. Giddens*, No. 3:20-cv-563, 2023 WL 3352193, at *1 (E.D. Va. May 10, 2023 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

Because Plaintiff is representing himself, these standards must be applied while liberally construing his filings in this case. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

In their Motion for Summary Judgment, Defendants Burdette and McRee argue: (1) any § 1983 claims brought against them in their official capacities are barred by the Eleventh Amendment;[17] (2) Plaintiff does not sufficiently allege any § 1983 claim against them; (3)

---

[17] In his briefing, Plaintiff does not dispute that the Eleventh Amendment bars any claims brought against Defendants McRee and Burdette in their official capacities. Regardless, it is well settled that because SCDC is an arm of the State of South Carolina, any claims brought against SCDC employees in their official capacities are barred by the Eleventh Amendment. *See, e.g.*, *Rhoden v. S.C. Dep't of Corr.*, No. 4:17-cv-2537-HMH-TER, 2017 WL 9288217, at *3 (D.S.C. Oct. 4, 2017) (finding claims against prison warden in his official capacity should be dismissed because warden is entitled to Eleventh Amendment immunity), *adopted by*, 2017 WL 5494126 (D.S.C. Nov. 16, 2017), *amended*, 2017 WL 6032341 (D.S.C. Dec. 6, 2017); *Edwards v. Patell*, No. 4:06-cv-0748-HFF-TER, 2007 WL 2428548, at *8 (D.S.C.

Plaintiff's § 1983 claims fail as a matter of law; (4) they are entitled to qualified immunity; and (5) Plaintiff has failed to exhaust his administrative remedies. (Dkt. No. 78-1.)

In her Motion for Summary Judgment, Defendant Driver argues: (1) Plaintiff does not sufficiently allege any § 1983 claim against Driver; (2) Plaintiff's § 1983 claims fail as a matter of law; (3) Plaintiff cannot establish his claim that the Moderna vaccine caused injuries absent qualified expert witness testimony; (4) Driver is entitled to qualified immunity; and (5) under the PREP Act, Driver is immune to any claim based on an injury from the Moderna vaccine. (Dkt. No. 80-1.)

Below, the undersigned first summarizes the law applicable to Plaintiff's Eighth Amendment claim and then considers the parties' arguments.

A.    **Applicable Law—Deliberate Indifference**

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Pfaller v. Amonette*, 55 F.4th 436, 445 (4th Cir. 2022). A deliberate indifference claim has both an objective and subjective component. *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019). "That is, the plaintiff must demonstrate that the defendant prison official acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

---

Aug. 21, 2007) (dismissing claims brought against defendant "employee of SCDC" in his official capacity); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . [and] is no different from a suit against the State itself.") (internal citation omitted); *Abebe v. S.C. Dep't of Corr.*, No. 0:09-cv-3111-MBS-PJ, 2010 WL 2991595, at *2 (D.S.C. July 2, 2010 ("As a state agency, SCDC is an arm of the State of South Carolina."), *adopted in part*, 2010 WL 3258595 (D.S.C. Aug. 16, 2010).

A medical condition is serious enough to satisfy the objective component if it has "been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. (citing *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). The subjective component has two subparts: "a plaintiff must show the prison official (1) had actual knowledge of the risk of harm to the inmate and (2) recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Pfaller*, 55 F.4th at 445 (citing *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)) (internal quotation marks omitted).

While mere negligence is not enough, *id*. (citing *De'lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003)), evidence of an official's "actual purposive intent" is not required, *id*. (citing *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013)). "Instead, deliberate indifference is most akin to criminal-law recklessness." *Id*.  "[S]o long as the official who knew of a substantial risk to inmate health or safety 'responded reasonably to the risk,' they cannot be found liable under the Eighth Amendment, 'even if the harm ultimately was not averted.'" *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 844 (1994)). Differences of opinion between an inmate patient and medical staff over the course of medical treatment are insufficient to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (finding inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and the medical personnel does not rise to the level of a constitutional violation). Likewise, "[m]ere delay" in medical treatment, without more, is not deliberate indifference to a serious medical need. *Moskos v. Hardee*, 24 F. 4th 289, 298 (4th Cir. 2022); *see Smith v. Walker*, 845 F. Supp. 2d 673, 677 (W.D.N.C. 2012) ("Delay in medical care, without showing substantial harm, does not violate the [Constitution].").

Also, it is well-settled that in order for an individual to be liable under § 1983, it must be affirmatively shown that the individual acted personally in the deprivation of the plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977). To state a § 1983 claim, Plaintiff must show that he suffered a specific injury as a result of specific conduct of a Defendant, and an affirmative link between the injury and that conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371–72 (1976).

### B.     Analysis—Sufficiency of Allegations

Upon careful review, the undersigned finds that Plaintiff has failed to allege a plausible constitutional violation based on the medical treatment provided by Defendants Driver, McRee, and Burdette. As recounted above, Plaintiff's deliberate indifference claim hinges on the alleged inadequate medical treatment Plaintiff received at MCI from approximately July of 2022 through the date of his transfer to LCI in September of 2023. His claim largely focuses on Defendants' alleged failure to adequately address and treat the "knots" and "nodules" that Plaintiff developed following his first dose of the Moderna COVID-19 vaccine on July 22, 2022. (Dkt. No. 2 at 2–3; 2-1 at 4–6.) Here, Plaintiff's assertion that the "knots" and "nodules" were caused by the Moderna vaccine is based on his own diagnosis, not one of a medical professional, which is insufficient to state a serious medical need. *See Perry v. JPAY, Inc.*, No. 7:16-cv-00362, 2018 WL 1309743, at *8 (W.D. Va. Mar. 13, 2018) (explaining that the prisoner "concludes a correlation between the dim cell lights and his eye strain, fatigue, and headaches based on his own diagnosis, not one of a medical professional, which is insufficient to state a serious medical need") (internal quotation marks omitted).

Further, even assuming Plaintiff's alleged ailments constitute a serious medical need, Plaintiff has failed to sufficiently allege that any Defendant acted with deliberate indifference. Rather, his allegations concerning Defendants' alleged failure to adequately treat his "knots" and

"nodules" amount to, at most, negligence or differences in judgment between an inmate and medical personnel, which does not rise to the level of a constitutional violation. *Wright*, 766 F.2d at 849 (4th Cir. 1985) (finding inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and the medical personnel does not rise to the level of a constitutional violation). By Plaintiff's own account, in response to Plaintiff's complaints about the knot at his injection site and shortness of breath, McRee sent Plaintiff to get an x-ray. (Dkt. No. 2 at 1; Dkt. No. 2-1 at 4.) While Plaintiff claims he should not have received the second dose of the Moderna vaccine based on those x-ray results, this amounts to a disagreement with his medical provider rather than deliberate indifference. In response to Plaintiff's later complaints of pain, Driver examined Plaintiff's throat with a flashlight and reported that she could not see anything wrong. (Dkt. No. 2 at 1–2.) Because Plaintiff continued to complain of pain due to the "knots," Defendants ordered lab work and scheduled Plaintiff to see an ear nose and throat specialist. (*Id.* at 4–6.)

Such allegations fail to show deliberate indifference, where Defendants provided some medical treatment, and Plaintiff simply disagreed with their professional judgment. *Wester v. Jones*, 554 F.2d 1285, 1286 (4th Cir. 1977) ("Even if the doctor were negligent in examining [Plaintiff] and in making an incorrect diagnosis, his failure to exercise sound professional judgment would not constitute deliberate indifference to serious medical needs."); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975) (plaintiff was under "constant medical supervision from the time of his arrival" in state prison and "[q]uestions of medical judgment are not subject to judicial review"). And even assuming Defendants were at fault for the approximate three-month delay in Plaintiff receiving his Vitamin B and Folic Acid (*see* Dkt. No. 2-1 at 4–5), Plaintiff has failed to allege any harm or change in his underlying medical conditions due specifically to this

delay. *See Harvey v. Hobbs*, No. 1:20-cv-605 (TSE/TCB), 2021 WL 3641462, at *5 (E.D. Va. Aug. 17, 2021) ("Plaintiff does not allege any harm or change in either of his underlying conditions (HIV and hypertension) from the delay in receiving his medication. Plaintiff's failure to allege any such harm is fatal to his claim despite the temporary symptoms he alleges.").

For the foregoing reasons, the undersigned recommends Plaintiff has failed to state a § 1983 claim for deliberate indifference, and Defendants are entitled to summary judgment on this basis.[18]

### C.    Analysis—Merits of § 1983 Deliberate Indifference Claim

Assuming *arguendo* that Plaintiff has sufficiently pled a § 1983 deliberate indifference claim, the evidence nevertheless fails to establish a genuine issue of material fact that Defendants were deliberately indifferent to a serious medical need. Even construed in the light most favorable to Plaintiff, the evidence indicates Defendants did not know of Plaintiff's August 17, 2022 x-ray results prior to Plaintiff receiving the second dose of the Moderna vaccine. (Dkt. No. 80-2 at 4, 39–41.) And the record establishes that Defendants were not involved in administering either dose of the Moderna vaccine to Plaintiff. (*Id*. at 3, 32–33, 36–37.) Regardless, Plaintiff has not submitted any compelling evidence indicating that a second dose of the Moderna vaccine was contraindicated by Plaintiff's x-ray results, and Plaintiff relies only on his unverified allegations to insist that he reported problematic symptoms to Defendants prior to receiving the second dose. Indeed, Plaintiff signed a form consenting to the second dose on August 18, 2022, in which he indicated he was not sick that day and he had never had "a severe reaction to any vaccine or

---

[18] To the extent Plaintiff expands on his allegations in his briefing, "Plaintiff cannot amend his amended complaint via a motion for summary judgment or response thereto." *Haendel v. Clark*, No. 7:17-cv-00135, 2018 WL 4473118, at *5 n.8 (W.D. Va. Sept. 18, 2018); *see also Cumpston v. Cent. Supply Co. of W. Va.*, No. 1:17-cv-61, 2018 WL 4855216, at *7 (N.D. W. Va. Oct. 5, 2018) ("[T]he Court will not allow [the plaintiff] to amend his complaint at this late stage to avoid summary judgment, especially when those facts where available to him at the outset.").

injectable therapy." (Dkt. No. 80-2 at 37.) Given this record, Plaintiff's purported printouts from the CDC website, without more, do not support finding any deliberate indifference by Defendants.[19] (*See* Dkt. Nos. 89-2; 89-3; 90-4; 90-5; 90-9). Rather, Plaintiff's allegations here amount to a disagreement with his medical providers' professional judgment. As discussed above, such disagreement does not establish a constitutional violation. *See Wright*, 766 F.2d at 849 (finding inadequate treatment due to negligence, inadvertence, or differences in judgment between an inmate and the medical personnel does not rise to the level of a constitutional violation).

As for Plaintiff's treatment following his second dose of the Moderna vaccine, the record shows that Plaintiff received multiple prescriptions of pain medications, x-rays, lab work, and additional treatment from outside specialists. The record evidence does not document any interactions between Plaintiff and Defendant Burdette. As for Defendants Driver and McRee, the record does not evince any conduct indicative of deliberate indifference. Rather, during her limited documented interactions with Plaintiff, Driver provided Plaintiff medical treatment in accordance with her professional judgment, including administering breathing treatments as needed. (Dkt. Nos. 80-2 at 2–3, 16–17, 19–20, 23–25, 27, 30.) Similarly, McRee examined Plaintiff on numerous occasions and referred Plaintiff for treatment from outside specialists as needed, including allergists, pulmonologists, oncologists, hematologists, and otolaryngologists. (*Id*. at 4, 45–48, 59–62, 68, 79–81, 97; Dkt. No. 90-3 at 65–66.)

There is no evidence that Defendants Driver, McRee, or Burdette ignored Plaintiff's complaints of pain or otherwise failed to provide Plaintiff necessary medical treatment. Plaintiff's

---

[19] Upon review, the purported CDC materials indicate that a second dose of a COVID-19 vaccine should not be given when the recipient has "had a severe allergic reaction." (Dkt. No. 90-5.) As stated above, Plaintiff's medical record does not indicate that Plaintiff had a severe allergic reaction or that he reported any other problematic symptoms between his first and second doses of the Moderna vaccine in 2022. Plaintiff's unverified allegations do not create a genuine issue of material fact on this issue. Accordingly, even crediting the CDC materials provided by Plaintiff, they do not support finding any deliberate indifference by Defendants.

unverified allegations to the contrary do not support finding Defendants were deliberately indifferent to Plaintiff's serious medical needs. *See Aten v. Richland Cnty.*, No. 5:16-cv-03614-PMD-KDW, 2018 WL 4560572, at *8 (D.S.C. July 3, 2018) ("While Plaintiff makes numerous unverified allegations, those types of assertions are not sufficient to establish that genuine issues of material fact exist" to support a § 1983 claim for deliberate indifference to a serious medical need), *adopted by*, 2018 WL 4109608 (D.S.C. Aug. 29, 2018), *aff'd sub nom. Aten v. Wiggins*, 839 F. App'x 798 (4th Cir. 2021); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial.").

While Plaintiff claims Defendants reviewed Plaintiff's "Jan. 30, 2023 lab results" and failed to put Plaintiff on Vitamin B and Folic Acid in accordance with those results, those lab results do not appear to be in the record. (Dkt. No. 2-1 at 5.) Regardless, even assuming there was a delay in Plaintiff receiving his Vitamin B and Folic Acid for which Defendants were at fault, Plaintiff has failed to show any harm or change in his underlying medical conditions due to this delay. *See Nelson v. Caswell*, No. 8:05-cv-874HMH-BHH, 2006 WL 1432084, at *4 (D.S.C. May 23, 2006) ("Critically, an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed.") (internal quotations omitted); *see also Lewis v. Eagleton*, No. 4:08-cv-02800-GRA, 2010 WL 755636, at *8 (D.S.C. Feb. 26, 2010) ("There is no competent evidence in the record to show the delay . . . caused any harm."), *aff'd*, 404 F. App'x 740 (4th Cir. 2010).

In sum, the record documents that Plaintiff received frequent and extensive medical treatment for his various alleged ailments throughout the time period at issue.  While Plaintiff may believe he should have received different medical treatment, "[a] disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation." *Mickell v. Ozmint*, No. 3:08-cv-2973-RBH, 2009 WL 1361873, at *4 (D.S.C. May 11, 2009) (granting summary judgment on § 1983 deliberate indifference claim where "plaintiff disagrees with the treatment he has been offered"); *Duncan v. Gordon*, Case No. 8:06-cv-396-MBS, 2007 WL 1031939, at *3 (D.S.C. Mar. 29, 2007), *aff'd*, 260 F. App'x 543 (4th Cir. 2007) (granting summary judgment on deliberate indifference claim where "[t]here is no evidence that Defendant nurses withheld any medical treatment in an effort to deliberately or recklessly ignore an excessive risk to Plaintiff's health"); *Krug v. Loranth*, No. 1:13-cv-01409-DCN, 2014 WL 4955365, at *4 (D.S.C. Sept. 29, 2014) ("The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation."), *aff'd*, 599 F. App'x 512 (4th Cir. 2015).

Accordingly, no genuine issue of material fact exists as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment, and Defendants are therefore entitled to summary judgment on this alternative basis.

Additionally, because they are government officials, Defendants are entitled to qualified immunity from civil damages so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Christian v. Magill*, No. 0:15-cv-03379-DCN, 2016 WL 4975020, at *6 (D.S.C. Sept. 19, 2016) (applying qualified immunity analysis to employees of the SVPTP). In other words, Defendants are entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right

at issue was not clearly established at the time of the official's alleged misconduct. See *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, because Plaintiff has not demonstrated that any Defendants violated his constitutional rights, Defendants likewise are entitled to a finding of qualified immunity as to Plaintiff's deliberate indifference claim.[20]

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** that the Motions for Summary Judgment filed by Defendants Burdette, McRee, and Driver (Dkt. Nos. 78; 80) be **GRANTED** on the basis that Plaintiff has failed to state a § 1983 deliberate indifference claim. Alternatively, it is RECOMMENDED that Defendants' Motions for Summary Judgment be **GRANTED** because Plaintiff's § 1983 claim fails on the merits.

**IT IS SO RECOMMENDED.**

November 18, 2025

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

---

[20] Having recommended dismissal on the above grounds, the undersigned does not address Defendants' remaining arguments for dismissal. (*See* Dkt. Nos. 78-1; 80-1.) In support of their argument for dismissal based on exhaustion, Defendants rely on grievances that have not been provided for the Court's review. (*See* Dkt. No. 78-1 at 15–16; Dkt. No. 78-4 at 10 (referencing an "Exhibit A," which is not in the record).) Accordingly, the undersigned does not address Defendants' exhaustion argument for this additional reason.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).